## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PAUL W. ROTH III AND SUSAN C. ROTH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 15 cv 04779 |
| v. | ) ) | The Honorable Amy J. St. Eve |
| PNC BANK, N.A. | ) ) | |
| Defendant. | ) | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant PNC Bank, National Association ("PNC"), through its attorneys Clark Hill PLC and pursuant to Federal Rule of Civil Procedure 12(b)(6), submits the following Reply Memorandum in Support of its Motion to Dismiss Plaintiffs' Complaint:

## INTRODUCTION

If there ever was a case which "made mountains out of molehills," this case is it. Plaintiffs are attempting to seize on a simple, internal bookkeeping error – which has already been corrected – to allege counts for violation of the Real Estate Settlement Procedures Act ("RESPA") and Illinois Consumer Fraud Act ("ICFA") and for breach of contract. Plaintiffs' feigned outrage aside, the simple truth is that the internal bookkeeping error caused Plaintiffs no harm, whatsoever. More importantly, for purposes of this Motion, it is clear that Plaintiffs' Complaint fails to allege facts showing that PNC engaged in any deceptive or unfair conduct or that PNC breached any provision of the parties' Loan Modification Agreement. Further, Plaintiffs cannot state a claim for violation of RESPA because they cannot allege that they sent PNC a qualified written request triggering the response requirements of the act. Therefore, for

the reasons set forth below and those described in PNC's Motion, PNC requests that the Court grant its Motion and dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

A.  **Plaintiffs do not – and cannot – allege that they sent a qualified written request to PNC's designated address.**

As explained in PNC's principal brief, "a servicer is required to respond and investigate under RESPA only upon receipt of a QWR," or qualified written request. *Lucero v. Cenlar FSB*, 2015 U.S. Dist. Lexis 112629, *6 (W.D. Wash. Aug. 25, 2015) (citing *Berneike v. Citimortgage, Inc.*, 708 F.3d 1141 (10ᵗʰ Cir. 2013)). "If a communication does not satisfy all of the requirements of a QWR, ***including receipt at the designated address***, it 'amounts to nothing more than general correspondence between a borrower and servicer' and does not trigger potential liability under the statute." *Id.* (quoting *Berneike*, *supra*, at 1148-1149) (emphasis added). Importantly, submission of a document constituting a qualified written request is a necessary element of a plaintiff's RESPA claim; it is not an affirmative defense. *Catalan v. RBC Mort. Co.*, 2008 U.S. Dist. Lexis 52065, *16-17 (N.D. Ill. July 8, 2008). Therefore, in order to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must not only allege this necessary element of their RESPA claim, they must also "actually suggest that [they have] a right to relief, by providing allegations that raise a right to relief above the speculative level." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7ᵗʰ Cir. 2008). Plaintiffs' Complaint here does not – can cannot – meet this pleading standard and, accordingly, must be dismissed.

Specifically, Plaintiffs do not allege that they mailed any document to PNC's designated address for the receipt of qualified written requests, which was at all relevant times "PNC Mortgage P.O. Box 8807 Dayton, OH 45401-8807." Doc. # 1, Compl., ¶¶ 44, 52, 94, 97, 101,

2

102, Ex. D, Ex. I.  Moreover, in response to PNC's Motion, Plaintiffs do not dispute that they received notice of the designated address by way of their regular monthly mortgage statements (one of which is attached to the Complaint as Exhibit E) and that they did not mail any document to this designated address.  *See* Doc. # 22, Pls' Response, pp. 6-9.  This is fatal to Plaintiffs' RESPA claim and dismissal pursuant to Rule 12(b)(6) is proper.  *See Roth v. Citimortgage, Inc.*, 756 F.3d 178, 181 (2nd Cir. 2014) (affirming dismissal of RESPA claim pursuant to Rule 12(b)(6) where plaintiff did not send qualified a written request to her mortgage lender's designated address); *Bernieke*, 708 F.3d at 1145-1146 (*accord*).

In response to PNC's Motion, Plaintiffs instead make two arguments in an attempt to salvage their RESPA claim.  Both arguments fail.  First, they argue, without citation to any statutory or decisional authority, that this "is a matter not appropriately decided at this time." Doc. # 22, p. 6.  Numerous courts, including the United States Courts of Appeals for the Second and Tenth Circuits in, respectively, *Roth* and *Bernieke*, *supra*, have held just the opposite, affirming dismissal of RESPA claims pursuant to Rule 12(b)(6) where a claimant cannot allege that he sent a qualified written request to a lender's designated address for the receipt of such documents.  Simply put, Plaintiffs' argument on this point is wrong.

Second, Plaintiffs argue that PNC did not properly notify them of its designated address because the notice was not provided in a "separate document."  As explained in detail below, this argument also fails because Plaintiffs are wrong that PNC was required to send notice in a "separate document."  Plaintiffs cite no binding authority that supports this proposition and numerous federal cases say just the opposite.

Specifically, in *Catalan*, *supra*, the United States District Court for the Northern District of Illinois applied the regulation formerly set forth at 24 C.F.R. § 3500.21(e)(1), which stated

3

that "[b]y notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests." Plaintiffs rely on the words "separately delivered" to support their argument that notice of PNC's designated address by way of monthly mortgage statements is insufficient. But in *Roth*, *supra* at 182, the United States Court of Appeals for the Second Circuit held that "in specifying that notice may be 'either included in the Notice of Transfer or separately delivered,' 24 C.F.R. § 3500.21(e)(1) simply means that notice of the QWR address may be delivered separately from the Notice of Transfer – not that it cannot be delivered along with other mortgage information." Further, in *Catalan* the court held only that the defendant lender could not rely upon a payment coupon book in support of its assertion that it provided notice of its designated address at trial because the defendant improperly withheld the coupon book in discovery. 2008 U.S. Dist. Lexis 52065, *18. Plaintiffs' reliance on *Vought v. Bank of Am.*, 2010 U.S. Dist. Lexis 114159 (C.D. Ill. Sept. 24, 2010) and *McLean v. GMAC Mortg. Corp., Inc.*, 2008 U.S. Dist. Lexis 101275 (S.D. Fla. Dec. 16, 2008), is equally unavailing. *Vought* does **not** include the language attributed to it by Plaintiffs in their Response brief. *See* Doc. #22, p. 7. In *McLean*, the United States District Court for the Southern District of Florida held only that the specific language contained in monthly account billing statements issued by the defendant lender did not sufficiently identify a designated address for the receipt of qualified written requests, where it only stated that "General Inquiries" "should" be sent to a certain address. 2008 U.S. Dist. Lexis 101275, *10-11.

Indeed, numerous courts, including the United States Courts of Appeals for the Second and Tenth Circuits, have held that ***notice of a designated address can, in fact, be provided in monthly mortgage statements.*** *See, e.g.*, *Roth*, *supra*, 182-183 (affirming dismissal of RESPA

4

claim pursuant to Rule 12(b)(6) where notice of designated address was provided in monthly mortgage statements); *Bernieke, supra*, 1147 (affirming dismissal of RESPA claim pursuant to Rule 12(b)(6) where plaintiff "does not dispute that this notice was contained in each of her monthly billing statements, and she explicitly referenced the monthly billing statements in her complaint"); *Lucero, supra*, *4; *Griffin v. Bank of Am.*, 2015 U.S. Dist. Lexis 83977, *4, 10 (W.D. Tenn. June 24, 2015); *Romero v. Bank of Am.*, 2015 U.S. Dist. Lexis 6600, *17 (D. Kan. Jan. 21, 2015).

Accordingly, since Plaintiffs have not – and cannot – allege that they sent a qualified written request to PNC's designated address for the receipt of such requests, Plaintiffs' RESPA claim must be dismissed pursuant to Rule 12(b)(6).

**B.    Plaintiffs do not – and cannot – allege facts supporting a claim under the ICFA for deceptive or unfair acts or practices.**

Even after reading the response, it is apparent that Plaintiffs have not and cannot allege facts which support their ICFA claim.   "To succeed in a private cause of action under the Consumer Fraud Act, a plaintiff must prove "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.'" *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 190, 835 N.E.2d 801, 296 Ill. Dec. 448 (Ill. 2005).

Plaintiffs cannot show reliance on the internal bookkeeping error, nor can they show PNC intended for Plaintiffs to rely on its internal bookkeeping error.   The loan modification and the payment statements sent to the Plaintiffs clearly show the loan balance as approximately $300,000.00 during the relevant period of time.   Plaintiffs admit in their response brief that they continue to make loan payments based on these terms.   PNC has never requested Defendants

5

make payments based upon a $400,000.00 loan balance, nor has it ever sent Plaintiffs any documents requiring payment based upon the same. This internal error has in no way effected Plaintiffs repayment of the loan as Plaintiffs continue to make payments under the terms of the loan modification. Simply put, Plaintiffs have acted in reliance upon the same information since they modified their loan—the correct information. Plaintiffs have wholly failed to demonstrate any reliance on PNC's bookkeeping error.

Moreover, Plaintiffs' claim fails because they cannot allege fact which could demonstrate that PNC intended for Plaintiffs to rely on the bookkeeping error. In fact the opposite has been shown. Again, PNC has never requested payment based on a $400,000.00 loan balance and Plaintiffs continue to make payments based upon the loan balance of approximately $300,000.00. Plaintiffs cannot allege any facts that indicate PNC wanted Plaintiffs to rely in their internal error, and for this reason alone Plaintiffs claim should be dismissed with prejudice. Furthermore, Plaintiffs fail to show PNC acted unfairly or deceptively as detailed further below.

    *1.*    *Plaintiffs do not allege any deceptive act or practice by PNC.*

As set forth in detail in PNC's Motion to Dismiss, Plaintiffs' Complaint fails to state a claim for violation of the ICFA for deceptive acts or practices because Plaintiffs do not – and cannot – allege facts establishing that PNC misrepresented the subject Loan balance to Plaintiffs or secretly imposed a second mortgage on the Property. Plaintiffs admit in their pleadings that the Loan balance was, at all times relevant to this action, approximately $300,000 and that PNC never recorded a second mortgage. *See* Doc. # 1, ¶¶ 9, 11, 15, 31, 33, 51, Ex. B. Plaintiffs have not alleged that the Loan Modification Agreement and all monthly Mortgage statements, on which Plaintiffs rely in support of their ICFA claim, falsely or incorrectly stated the Loan balance; but that at all times, they were accurate. *Id.*, ¶¶ 14, 107, 108, 119, 120, 122, 123, Ex. E.

Instead, Plaintiffs attempt to rely on incorrect information contained in PNC's internal Loan records and information. These records and information, however, cannot support an ICFA claim, because Plaintiffs do not – and cannot – allege that PNC intended that Plaintiffs receive or rely upon such records and information.[1] *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417; 775 N.E.2d 951 (Ill. 2002) (holding that "defendant's intent that the plaintiff rely on the deception" is a required element of a claim under the ICFA).

2. *Plaintiffs do not allege "unfair" acts or practices, as defined by the Federal Trade Commission.*

In *Robinson, supra*, which Plaintiffs tout in their Response brief as controlling, the Illinois Supreme Court explained that in determining whether an act is "unfair" for purposes of the ICFA, courts should turn to the "interpretations of the Federal Trade Commission and federal courts relating to Section 5(a) of the Federal Trade Commission Act." 201 Ill. 2d at 417. Applying this interpretation, "unfair" conduct is that which: offends public policy; is immoral unethical, oppressive, or unscrupulous; and causes substantial injury to consumers. *Id.* at 417-418. All three of these criteria need not necessarily be present; "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 418 (quoting *Cheshire Mortg. Servs., Inc. v. Montes*, 223 Conn. 80; 612 A.2d 1130 (Conn. 1992). But in any event, a plaintiff's allegations of such conduct must rise above bare assertions that a defendant's acts "violate public policy" or are "oppressive." *Id.* at 421. Rather, the plaintiff must allege facts describing the manner in which the alleged conduct violates public policy or is oppressive to consumers. *Id.*; *see also Windy City, supra*, 668 (under

---

[1]     In support of the ICFA claim, Plaintiff allege that Paul Roth relied only "upon the amounts that PNC stated that he owed **in his modification contract and mortgage loan statements**" and "the **terms of the subject loan**," which were indisputably correct. Doc. # 1, ¶¶ 119, 120.

federal pleading standards, a complaint must allege facts "actually suggest[ing] that [the plaintiff] has a right to relief, by providing allegations that raise a right to relief above the speculative level").

Notably, Illinois courts have set a high bar for what constitutes "unfair" conduct. For example, in *Robinson*, the court rejected the plaintiffs' argument that, in a loan transaction, double penalties, concealed costs, and early termination fees rose to the level of "unfairness" as contemplated by the ICFA. 201 Ill. 2d at 419-423. The Illinois Supreme Court affirmed the lower courts' holding that the plaintiffs therefore failed to state a claim for violation of the ICFA. *Id.* at 423-424. Cases in which courts have found "unfair" conduct involve, for example: express threats made against consumers (*see Ekl v. Knecht,* 223 Ill. App. 3d 234; 585 N.E.2d 156 (Ill. App. Ct. 1991)); conduct giving consumers no choice to avoid charges and penalties (*see Typpi v. PNC Bank*, 2014 U.S. Dist. Lexis 9746, *26, 28 (N.D. Ill. Jan. 27, 2014)); acceptance of a loan redemption payment only to return it shortly before obtaining a judgment of foreclosure (*see Typpi, supra*, *25); conduct constituting a criminal offense (*see Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008)); and conduct causing substantial losses to the public as a whole (*see Centerline, supra*, 780).

Here, Plaintiffs allege no conduct even remotely similar to such circumstances. As in *Robinson*, Plaintiffs' bare assertions that PNC's conduct "offends public policy" and "caused substantial injury to Roth and to consumers generally" fail to state a claim for violation of the ICFA, as they are unsupported by allegations showing that PNC actually engaged in conduct rising to the level of "unfairness" as contemplated by the ICFA.

8

**C.      Plaintiffs do not – and cannot - allege that PNC breached any contractual provision of the parties' Loan Modification Agreement.**

In response to PNC's Motion, Plaintiffs argue that PNC breached the Loan Modification Agreement by (1) making an internal bookkeeping error, (2) misrepresenting the Loan balance to Plaintiffs, and (3) reporting incorrect information to the credit reporting agencies. Doc. # 22, p. 13. As explained at length in PNC's principal brief in support of its Motion and above, Plaintiffs' Complaint fails to allege any actual misrepresentation made by PNC to Plaintiffs of the subject Loan balance, because there is no dispute that the Loan Modification Agreement and monthly Mortgage statements correctly reflected the Loan balance as approximately $300,000. Further, Plaintiffs do not point to any contractual provision of the Loan Modification Agreement addressing how PNC would internally reflect Plaintiffs' indebtedness or how PNC would report the indebtedness to credit reporting agencies.[2]   Therefore, Plaintiffs fail to state a claim for breach of contract.

---

[2]      Once again, if anything, Plaintiffs may have been able to assert a claim under the Fair Credit Reporting Act, had they followed the statutory procedure for making a consumer credit dispute.

203380224.2 19865/186672

## CONCLUSION

For these reasons, PNC respectfully requests that the Court grant its Motion and dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

**PNC BANK, N.A.**

By:   /s/Katie N. Simpson-Jones
            One of its Attorneys

Katie N. Simpson-Jones
ARDC: 6307017
CLARK HILL PLC
150 N. Michigan, Suite 2700
Chicago, IL 60601
Telephone No.: (312) 985-5900
Facsimile No.: (312) 985-5999

10