## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PAUL W. ROTH and SUSAN C. ROTH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 15 C 4779 |
| v. ) | |
| ) | Judge Amy J. St. Eve |
| PNC BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

### ORDER

The Court grants in part and denies in part Defendant's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant's answer is due on or before October 14, 2015. Status hearing set for November 19, 2015 is stricken and reset to October 20, 2015 at 8:30 a.m.

### STATEMENT

On May 29, 2015, Plaintiffs Paul W. Roth and Susan C. Roth filed the present Complaint against Defendant PNC Bank, N.A. ("PNC"), alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq.*, as well as violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, and a common law breach of contract claim. *See* 28 U.S.C. §§ 1331, 1332, 1367. Before the Court is PNC's motion to dismiss pursuant to Rule 12(b)(6). For the following reasons, the Court grants in part and denies in part PNC's motion.

### BACKGROUND

In their Complaint, Plaintiffs allege that the reside at 1517 Terrance Drive, Naperville, Illinois (the "Property") and that the Property is Plaintiffs' primary residence. (R. 1, Compl. ¶ 5.) Plaintiffs further allege that Defendant PNC is the servicer of their home mortgage loan. (*Id.* ¶¶ 6, 7.) In August 2011, Paul Roth entered into a loan modification agreement with PNC to avoid foreclosure. (*Id.* ¶ 8.) In particular, he agreed to modify the balance of his mortgage loan with PNC to approximately $300,000, which included a balloon payment of approximately $104,000 at the maturity of the loan. (*Id.* ¶¶ 9, 33.) Plaintiffs further allege that at that time PNC unilaterally increased the loan balance to over $400,000 as part of the loan modification and hid the increase by labeling it as a "second mortgage" in its internal records. (*Id.* ¶¶ 10, 51, 52.) Plaintiffs assert that they did not find out about the inflated principal balance or that PNC was representing that they owed a "second mortgage" until they attempted to refinance the home mortgage loan–that the bank denied because Plaintiffs reportedly owed PNC approximately $400,000. (*Id.* ¶ 12.) At the same time, PNC continued to collect monthly payments

representing in loan statements and payment coupons that Plaintiffs only owed $300,000 on their home mortgage loan. (*Id.* ¶ 14.)

Plaintiffs allege that on December 16, 2013, they sent their first qualified written request ("QWR") to PNC disputing the balance. (*Id.* ¶ 44.) Thereafter, on January 2, 2014, PNC sent a letter to Plaintiffs acknowledging receipt of December 2013 correspondence. (*Id.* ¶ 46.) Plaintiffs assert that on January 9, 2014, PNC responded to the first QWR without providing any explanation. (*Id.* ¶ 47.) Instead, PNC attached the payment history to the letter stating that Plaintiffs had a first mortgage loan in the amount of $297,583.52 and a second mortgage in the amount of $104,528.59 for a total balance of $402,112.11. (*Id.* ¶ 48.)

On February 10, 2014, Plaintiffs sent a second QWR to PNC disputing the balance and pointing to the specific time in the payment history when PNC increased the balance by $104,000. (*Id.* ¶¶ 52, 53.) According to Plaintiffs, PNC did not respond to Plaintiffs' second QWR. (*Id.* ¶ 54.) In April 2015, Paul Roth reviewed his online account on PNC's website and discovered that the breakdown of the mortgage loan had the same incorrect calculations that Plaintiffs presently dispute. (*Id.* ¶¶ 55-61.) Plaintiffs maintain that PNC has ignored their disputes and continues to record the loan as having a balance of over $400,000. (*Id.* ¶ 16.)

Furthermore, Plaintiffs allege that PNC has reported the $400,000 balance to credit bureaus and that they have suffered damages as a result, including losing equity in their home and not having the ability to refinance at a lower interest rate. (*Id.* ¶¶ 62, 63, 69.) Meanwhile, according to Plaintiffs, there has been no recorded or documented second mortgage on the Property. (*Id.* ¶ 51.)

**LEGAL STANDARD**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a Plaintiffs' "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).[1] "In reviewing the

---

[1] The Court notes that PNC sets forth the wrong legal standard for a Rule 12(b)(6) motion to dismiss using verbiage similar to the "no set of facts" language that originated in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In 2007, the

sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true, *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington No. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014). Also, when ruling on motions to dismiss, federal courts also consider documents attached to the pleadings without converting the motion to dismiss into a motion summary judgment, as long as the documents are referred to in the complaint and central to the Plaintiffs' claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); Fed.R.Civ.P. 10(c).

## ANALYSIS

**I.    RESPA Claim – Count II**

In Count II of their Complaint, Plaintiffs allege that PNC violated RESPA by failing to adequately respond to their December 2013 and February 2014 QWRs. "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortgage Corp.,* 629 F.3d 676, 680 (7th Cir. 2011). "The statute imposes a number of duties on lenders and loan servicers," including "that loan servicers respond promptly to borrowers' written requests for information." *Id*.; 12 U.S.C. § 2605(e). More specifically, a qualified written request ("QWR") triggers the loan servicer's duties to acknowledge and respond to a borrower's request for information, explanation, or correction. *See Catalan*, 629 F.3d at 680; 12 U.S.C. § 2605(e)(1), (2).

In its motion to dismiss, PNC first argues that Plaintiffs' attachment to their Complaint referenced in relation to the December 2013 QWR does not qualify as a QWR under the statute because the document is a facsimile from PNC to Paul Roth, presumably in response to Paul Roth's December 2013 written request. (R. 10-4, Ex. D, Fax.) Moreover, PNC attaches Paul Roth's actual December 2013 communication to PNC in the form of a facsimile memorandum sent to "Diane" at the Customer Service Research Department. (R. 16, Ex. A.) PNC argues that this first communication is not a QWR because Plaintiff faxed it instead of sending it to PNC's designated address. Likewise, PNC argues that Plaintiffs' correspondence in February 2014 cannot be a basis for Plaintiffs' RESPA claim because Plaintiffs failed to send this QWR to PNC's designated address. To clarify, RESPA regulations provide that a servicer may establish a separate address for the receipt and handling of QWRs. *See* 24 C.F.R. § 3500.21(e)(1); 12 C.F.R. §§ 1024.35(c), 1024.36(b). Simply put, "[i]f the servicer chooses to establish a separate and exclusive office and address, borrowers who fail to submit their QWRs to that location do so

---

United States Supreme Court unequivocally rejected this language when retooling the federal pleading standards. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("after puzzling the profession for 50 years, this famous observation has earned its retirement"). To clarify, the Supreme Court's decisions in *Twombly* and *Iqbal* added the plausibility standard to the federal pleading requirements. *See Peterson v. Winston & Strawn LLP,* 729 F.3d 750, 753 (7th Cir. 2013).

at their peril." *Catalan v. RBC Mortgage Co.,* No. 05 C 6920, 2008 WL 2741159, at *5 (N.D. Ill. July 8, 2008).

Here, Plaintiffs do not dispute that the December 2013 correspondence was a facsimile sent to "Diane" at the Customer Service Research Department. Plaintiffs, however, allege that PNC actually received and responded to this correspondence, therefore, they sufficiently stated a RESPA claim based on this correspondence. *See, e.g., Vought v. Bank of Am., NA,* No. 10 C 2052, 2010 WL 4683599, at *5 (C.D. Ill. Sept. 24, 2010) ("Plaintiffs have not failed to state a RESPA claim due their exhibits indicating they did not send their correspondence to the address designated by Defendants, where Plaintiffs have alleged that Defendants actually received Plaintiffs' communications.").

PNC, however, points to Plaintiffs' Ex. E, which is Plaintiffs' December 2013 mortgage statement informing them that they must use PNC's designated address in Dayton, Ohio to assert an error or request loan information. PNC maintains that its communication in Plaintiffs' mortgage statements serves as written notice of the address that Plaintiffs, as borrowers, must use under the RESPA regulations. PNC also points to Plaintiffs' Exhibit I, which is Plaintiffs' February 10, 2014 correspondence that is addressed to PNC Mortgage, 3232 Newmark Drive, Miamisburg, Ohio, in support of its assertion that Plaintiffs' sent the February 2014 QWR to the wrong address. Because Plaintiffs' attachments unequivocally show that Plaintiffs' February 2014 correspondence was not sent to the designated address, Plaintiffs' February 2014 QWR cannot be a basis of their RESPA claim.

Nevertheless, Plaintiffs argue that the December 2013 mortgage statement is insufficient to put them on notice of the designated address because any such designated address notice must be separate from a mortgage statement. Plaintiff, however, fails to cite to any legal authority to support this proposition, thus their argument is unavailing. Accordingly, the Court grants in part and denies in part PNC's motion to dismiss Plaintiffs' RESPA claim as alleged in Count II.

## II. ICFA Claim – Count III

In Count III of their Complaint, Plaintiffs allege that PNC has violated the ICFA for its unfair and deceptive practice of increasing Plaintiffs' loan balance to $400,000 in relation to the loan modification agreement. The ICFA, which tracks the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), is intended to protect consumers from unfair and deceptive business practices. *See Goldberg v. 401 North Wabash Venture LLC,* 755 F.3d 456, 460 (7th Cir. 2014); *Batson v. Live Nation Entm't, Inc.,* 746 F.3d 827, 830 (7th Cir. 2014). To prevail on an ICFA claim, a plaintiff must show that (1) the defendant committed a deceptive or unfair act or practice; (2) the defendant intended for the plaintiff to rely on the unfair or deceptive act or practice (3) the unfair or deceptive practice occurred in the course of trade or commerce; and (4) the unfair or deceptive conduct proximately caused the Plaintiffs' injury. *See Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015); *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014).

In its motion, PNC contends that Plaintiffs have not sufficiently alleged that PNC made any material misrepresentations to Plaintiffs, especially in light of the fact that the notation of $104,000 as a second mortgage was an internal reporting error.[2] In essence, PNC argues that Plaintiffs have pleaded themselves out of court by alleging that after they entered into loan modification agreement, their mortgage statements reflected the correct amount owed, namely, $300,000. *See Vinson v. Vermilion County, Ill.,* 776 F.3d 924, 929 (7th Cir. 2015) ("a plaintiff may plead herself out of court when she includes in her complaint facts that establish an impenetrable defense to her claims"). Although Plaintiff made these allegations, which suggest that PNC did not misrepresent the amount owed on the mortgage loan in the mortgage statements, Plaintiffs also allege that their payment history–that PNC attached to a January 2014 response letter–reflected a second mortgage of approximately $104,000 and that this additional amount led to their inability to refinance their mortgage. Construing their allegations and all reasonable inferences in Plaintiffs' favor, they have sufficiently alleged that PNC made a material misrepresentation to them via the erroneous payment history. The Court thus denies PNC's motion to dismiss Plaintiffs' ICFA claim as alleged in Count III of the Complaint.

### III. Breach of Contract Claim – Count I

In Count I of their Complaint, Plaintiffs allege that they have a valid and enforceable mortgage contract and loan modification agreement with PNC. "Under Illinois law, a breach of contract claim has four elements: '(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.'" *Hess v. Bresney,* 784 F.3d 1154, 1158-59 (7th Cir. 2015) (citation omitted). In Illinois, the "measure of damages for breach of contract is the amount that will compensate the aggrieved party for the loss 'which either fulfillment of the contract would have prevented or which the breach of it has entailed.'" *West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.,* 794 F.3d 666, 679 (7th Cir. 2015) (citation omitted).

Plaintiffs allege that they have performed their duties by tendering all monthly loan payments and by complying with the terms of the loan and loan modification contracts. Based on PNC's alleged inflation of the balance by over $104,000 and inaccurate recording of a second mortgage, Plaintiffs allege that PNC breached the loan modification contract. More specifically, Plaintiffs allege that PNC materially breached the contract by (1) failing to properly credit and apply Plaintiffs' loan payments; (2) assessing unauthorized fees and costs; (3) failing to provide accurate account information, among other reporting failures, and (4) failing to conduct affairs in good faith. As to damages, Plaintiffs maintain that they suffered a loss of equity in their property, were unable to refinance their mortgage at a better interest rate, and were forced to hire an attorney to respond to PNC's breach.

---

[2] PNC's arguments made for the first time in its reply brief are waived. *See Darif v. Holder,* 739 F.3d 329, 337 (7th Cir. 2014).

On the other hand, PNC makes arguments about the merits of Plaintiffs' claims, instead of the plausibility of the allegations. *See Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). PNC, for example, argues that the loan modification agreement does not include a contractual duty in connection with how PNC internally accounts for Plaintiffs' indebtedness and that Plaintiffs' damages are purely speculative. PNC further disputes Plaintiffs' "vague assertions" explaining that if Plaintiffs' claim survives the motion to dismiss, PNC will file a motion for summary judgment. (R. 16, Mem., at 10 n.5.) Indeed, PNC's arguments on the merits are best left for summary judgment. The Court therefore denies PNC's motion to dismiss Count I of the Complaint.

**Dated:** September 30, 2015

_____
**AMY J. ST. EVE**
**United States District Court Judge**